IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY TODD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHICAGO POLICE DETECTIVE )<br>ROBERT BRIDGES, STAR NO. )<br>20744; CHICAGO POLICE )<br>DEPARTMENT DETECTIVE )<br>GERALDO DE LUNA STAR NO. )<br>2845; CHICAGO POLICE OFFICER )<br>CHRISTOPHER PILGRIM STAR NO. )<br>14264; CHICAGO POLICE OFFICER )<br>JESSIE RESENDEZ STAR NO. 8740; )<br>CHICAGO POLICE OFFICER JASON )<br>WOLENSKI STAR NO. 11885, )<br>CHICAGO POLICE OFFICER )<br>STEVEN SANDERS STAR NO. 11082; )<br>CHICAGO POLICE OFFICER JAMES )<br>WYNN STAR NO. 6880; CHICAGO )<br>POLICE OFFICER SERGIO )<br>GLOWACKI STAR NO. 15452; )<br>CHICAGO POLICE OFFICER COOK )<br>STAR NO. 7301, THE CITY OF )<br>CHICAGO, A MUNICIPAL )<br>CORPORATION; JASON BOCK; )<br>AARON LANNGUTH; AND MIKE )<br>TORKA, INDIVIDUALLY AND AS )<br>AGENTS OF EPIC BURGER, INC., A )<br>CORPORATION, )<br>)<br>Defendants. | No. 19 C 1677<br><br>Judge John J. Tharp, Jr. |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Gregory Todd, a former general manager at Epic Burger, alleges that his former colleagues falsely accused him of burglarizing the restaurant and conspired with police to prosecute him for a crime that they knew he did not commit. Both the Epic Burger defendants and the defendant police officers have filed motions to dismiss. The Epic Burger defendants assert that

Todd fails to state a claim upon which relief can be granted. The defendant police officers have filed a partial motion to dismiss averring that Todd's state law false arrest, intentional infliction of emotional distress, and civil conspiracy claims are time-barred. For the following reasons, the police officer defendants' motion to dismiss is granted in part and denied in part, and the Epic Burger defendants' motion to dismiss is denied.

**BACKGROUND**

Plaintiff Gregory Todd was General Manager of an Epic Burger from 2012 to March 2017, when he states he was "inexplicably terminated from his position." Compl. ¶ 8. Todd filed a discrimination claim regarding his termination with the EEOC and IDHR. *Id.* ¶ 9. On April 2, 2017, a break-in occurred at the Epic Burger location that Todd had managed, and money was stolen. *Id.* ¶ 10. Todd alleges that three Epic Burger employees, defendants Jason Bock, Aaron Lannguth, and Mike Torka, viewed the surveillance video of the break-in and falsely reported to the police that Todd was the burglar though "it was clearly not Plaintiff Todd in that surveillance video." *Id.* ¶¶ 12-15. Todd further alleges that the Epic Burger defendants were aware of his discrimination claim, and that certain segments of the surveillance video were "inexplicably missing." *Id.* ¶¶ 12, 14. Defendant Chicago Police Detectives Robert Bridges and Geraldo De Luna obtained an arrest warrant "based on this and other false information . . . even though both Defendant Detectives witnessed the video and could see that it was not Plaintiff Todd who had committed the burglary at the Epic Burger." *Id.* ¶ 15. Todd was arrested on June 7, 2017. *Id.* ¶ 16.

According to Todd, "false information provided by both the Chicago Police Department Defendants and the Epic Burger Defendants was used at Plaintiff's bond hearing." *Id.* ¶ 17. Todd "was issued a bond that he could not meet and was forced to remain detained in the Cook County Jail" or on electronic monitoring until December 2017. *Id.* ¶¶ 18-20. Todd states that all of the

2

police officer defendants created or signed off on police reports that contained false information implicating Todd in the burglary, including the false information provided by the Epic Burger defendants, *id.* ¶ 21, and that all of "the Chicago Police Department Defendants and the Epic Burger Defendants were ready and willing to testify or in fact did testify against Plaintiff Todd at his criminal trial" in March 2018, *id.* ¶ 23. On March 9, 2018, Todd was acquitted of burglary. *Id.* ¶ 24. Todd filed this suit on March 10, 2019, asserting claims based on theories of false arrest, unlawful detention, malicious prosecution, civil conspiracy, intentional infliction of emotional distress, and indemnification.

## DISCUSSION

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In ruling on a motion to dismiss under Rule 12(b)(6), a court must construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but the court need not accept legal conclusions or conclusory allegations. *Id.* at 680-82.

I.  **Defendant Police Officers and City of Chicago**

The defendant police officers and City of Chicago have filed a joint partial motion to dismiss on the grounds that Todd's state law false arrest, intentional infliction of emotional

3

distress, and civil conspiracy claims are untimely.[1] The police officer defendants aver that Todd's Illinois state law claims are subject to a one-year statute of limitations under the Tort Immunity Act, 745 Ill. Comp. Stat. 10/8-101. Officers' MTD at 4, ECF No. 18. According to these defendants, each of these claims accrued at the time of Todd's arrest on June 7, 2017, and therefore he had until June 7, 2018 to bring these claims.

As a general matter, "because the period of limitations is an affirmative defense it is rarely a good reason to dismiss under Rule 12(b)(6)." *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004). If, however, the allegations in the complaint itself "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 802 (7th Cir. 2008). For Todd's "state law false arrest claim,"[2] though the defendant officers aver that the statute of limitations began when he was held pursuant to legal process or bound over for trial, Officers' MTD at 6, ECF No. 18, the Seventh Circuit's holding in *Manuel v. City of Joliet* makes clear that a false arrest claim that implicates continuing unlawful detention accrues when the detention ends. 903 F.3d 667, 669 (7th Cir. 2018) ("When a search or seizure causes injury independent of time spent in custody, the claim accrues immediately; but when the objection is to the custody, a different approach must control."). The Seventh Circuit held that while there "is no such thing as a constitutional right not to be prosecuted without probable cause . . . there *is* a constitutional right

---

[1] The defendants also argue in their motion to dismiss that Todd fails to state a claim for intentional infliction of emotional distress, but the defendants withdraw that argument in their reply in support of the motion. Reply Officers' MTD at 6, ECF No. 40.

[2] The parties have not identified, and the Court has not ascertained, any unique characteristics of Illinois law that would lead to a different result from that set forth in federal law. *See Smith v. Boudreau*, 366 Ill. App. 3d 958, 968, 852 N.E.2d 433, 442 (Ill. App. Ct. 2006) (citing *Wallace v. City of Chicago*, 440 F.3d 421, 427 (7th Cir. 2006), *Manuel*'s predecessor, as controlling accrual of state and federal false arrest claims).

not to be held in custody without probable cause. Because the wrong is the detention rather than the existence of criminal charges, the period of limitations also should depend on the dates of the detention." *Id.* at 670. Accordingly, "a Fourth Amendment claim for unlawful pretrial detention accrues when the detention ends." *Mitchell v. City of Elgin*, 912 F.3d 1012, 1013 (7th Cir. 2019). In Count VII, Todd incorporates both wrongful arrest and unlawful detention into his state law false arrest claim; as such, under *Manuel*, his claim accrued once his detention ended in December 2017. *See* Compl. ¶ 20. Even with the benefit of this later accrual date, however, Todd's claim is untimely under state law; he did not file his complaint until March 10, 2019.[3]

But so what? In the absence of any substantive difference in state and federal law, saying that the plaintiff's "state law" false arrest claim is time-barred is pointless; the same claim survives under the two-year statute of limitations that applies to the false arrest claim brought pursuant to 42 U.S.C. § 1983. While it is clear that the false arrest claim will fail under state law, where the same claim survives under another legal theory, the claim cannot be dismissed under Rule 12(b)(6); that rule permits dismissal only when a claim fails to give rise to right to relief under some legal theory. A claim is "the aggregate of operative facts which give rise to a right enforceable in the courts." *Florek v. Village of Mundelein*, 649 F.3d 594, 599 (7th Cir. 2011). "One claim supported by multiple theories does not somehow become multiple claims. See *Florek*, 649 F.3d at 599 (Fourth Amendment claim of unreasonable seizure was one claim, even if plaintiff had multiple theories of why seizure was unreasonable)." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012) (cleaned up). Given the two-year statute of limitations applicable to the

---

[3] In addition, Todd failed to present any argument about the timeliness of his false arrest claim in his response to the officers' motion to dismiss and accordingly has waived such an argument. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011).

false arrest claim under § 1983, there is no basis in the federal rules to dismiss a count that asserts the claim based on a legal theory that is destined to fail.

The same would be true of Todd's conspiracy claim, which is brought under both federal and state law—but for the fact that even under state law, the conspiracy claim appears to be timely. Here, again, the defendants argue that the one-year statute of limitations began on the date of his arrest. Officers' MTD at 5, ECF No. 18. "[C]onspiracy, standing alone, is not a separate and distinct tort in Illinois." *Weber v. Cueto*, 253 Ill. App. 3d 509, 518, 624 N.E.2d 442, 449 (Ill. App. Ct. 1993). "Because it is the underlying tortious acts performed pursuant to the agreement that give rise to a claim for civil conspiracy, it is logical that a conspiracy claim itself be governed by the statute of limitations for the underlying tort." *Mauvais-Jarvis v. Wong*, 2013 IL App (1st) 120070, ¶ 110, 987 N.E.2d 864, 894 (Ill. App. Ct. 2013). Todd avers, however, that the underlying tort supporting his conspiracy claim is malicious prosecution rather than false arrest. Compl. ¶¶ 66-68; Resp. Officers' MTD at 5-6, ECF No. 38. Under Illinois law, "[a] cause of action for malicious prosecution does not accrue until the criminal proceeding on which it is based has been terminated in the plaintiff's favor." *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 99, 820 N.E.2d 455, 459 (Ill. 2004). Todd was acquitted on March 9, 2018 and filed this case on March 10, 2019.[4] Accordingly,

---

[4] The one-year statute of limitations would have run on Saturday, March 9, 2019, but under Illinois law the period is extended until the next business day. *See* 5 Ill. Comp. Stat. 70/1.11 ("The time within which any act provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is Saturday or Sunday or is a holiday as defined or fixed in any statute now or hereafter in force in this State, and then it shall also be excluded. If the day succeeding such Saturday, Sunday or holiday is also a holiday or a Saturday or Sunday then such succeeding day shall also be excluded."). This rule applies even though the use of e-filing in federal court allowed the filing to be made on the weekend (and Plaintiff actually filed the brief on a Sunday). *See Farley v. Koepp*, 788 F.3d 681, 684 & n.2 (7th Cir. 2015).

his civil conspiracy claim predicated on his malicious prosecution claim is timely. *See, e.g.*, *Simon v. Northwestern Univ.*, 175 F. Supp. 3d 973, 985-86 (N.D. Ill. 2016).

As to Todd's IIED claim, he similarly states that "Defendants argue that the accrual of Plaintiff's intentional infliction of emotional distress [claim] is tied to Plaintiff's arrest . . . failing to appreciate that their wrongful conduct extended throughout Plaintiff's malicious prosecution." Resp. Officers' MTD at 6, ECF No. 38, and cites district court holdings that "IIED claims based on facts alleged in parallel claims for malicious prosecution accrue only when state criminal proceedings are terminated," *id.* at 7; *see, e.g.*, *Carroccia v. Anderson*, 249 F. Supp. 2d 1016, 1028 (N.D. Ill. 2003). The Seventh Circuit's holding in *Bridewell v. Eberlie*, 730 F.3d 672, 678 (7th Cir. 2013), however, forecloses this result: "a claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of the arrest." "[C]ourts in this district have consistently applied *Bridewell* broadly, holding that IIED claims of this sort accrue on the day of arrest, even where the distress alleged is 'intertwined' with a claim for malicious prosecution." *Friends-Smiley v. City of Chicago*, No. 16-CV-5646, 2016 WL 6092637, at *2 (N.D. Ill. Oct. 19, 2016) (collecting cases).[5]

Todd argues that his IIED claim is subject to the continuing tort rule, but "to the extent that Plaintiffs attempt to characterize Defendants' actions [as] a 'continuing tort' for limitations purposes, that route is similarly foreclosed for IIED claims." *Id.* (discussing *Bridewell*'s holding).

---

[5] To the extent that Todd cites cases holding that IIED claims related to malicious prosecution do not accrue on the date of arrest, Resp. Officers' MTD at 6-7, ECF No. 38, these cases either do not contend with *Bridewell*, *e.g.*, *La Playita Cicero, Inc. v. Town of Cicero*, 175 F. Supp. 3d 953, 970 (N.D. Ill. 2016), rest on concessions by defendants, *Jones v. City of Chicago*, No. 15-CV-1231, 2017 WL 6733677, at *3 (N.D. Ill. Dec. 18, 2017), or involve plaintiffs who were convicted or sentenced and, accordingly, could not bring their IIED claims until the conviction or sentence was vacated, per *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) and *Lieberman v. Liberty Healthcare Corp.*, 408 Ill. App. 3d 1102, 1111, 948 N.E.2d 1100, 1107 (Ill. App. Ct. 2011), which is not relevant in this case in light of Todd's acquittal.

While *Bridewell* leaves "open the possibility that a new IIED claim could arise based on events after an initial injury where there is an allegation that the defendants acted with a 'freshly formed intention to cause emotional distress,'" *Hill v. City of Chicago*, No. 13-CV-4847, 2014 WL 1978407, at *3 (N.D. Ill. May 14, 2014), the "idea that failing to reverse the ongoing effects of a tort restarts the period of limitations has no support in Illinois law—or in federal law either." *Bridewell*, 730 F.3d at 678. Here, Todd does not allege that the defendant officers acted with "freshly formed intention" to cause emotional distress; rather, his allegations and related conspiracy claim indicate that this was a continuous course of conduct. *Cf. Hill*, 2014 WL 1978407, at *4 ("Mr. Hill's IIED claim arising from defending against the criminal charges also is time-barred, as the allegedly bad intent with which his prosecution began continued through the time of his acquittal."). Accordingly, *Bridewell* controls and Todd's IIED claim is time-barred. The defendant officers' and City of Chicago's partial motion to dismiss is granted as to Todd's IIED claim and denied as to his state law claims for false arrest and conspiracy (founded on a malicious prosecution theory).

## II. Epic Burger Defendants

Todd brings claims, based on state law, of malicious prosecution, false arrest, intentional infliction of emotional distress, and civil conspiracy against the Epic Burger defendants, who have moved to dismiss for failure to state a claim upon which relief may be granted.[6] At this stage,

---

[6] As the Epic Burger defendants are not municipal employees, Todd's state law tort claims against the Epic Burger defendants are subject to a two-year state of limitations rather than the Tort Immunity Act's one-year period. *See, e.g.*, *Rosado v. Gonzalez*, 832 F.3d 714, 716 (7th Cir. 2016) (citing 735 Ill. Comp. Stat. 5/13-202).

8

however, Todd has adequately pled each of his claims and, accordingly, the Epic Burger defendants' motion to dismiss is denied.

"To state a claim of malicious prosecution, a plaintiff must allege facts showing (1) the commencement or continuance of an [sic] civil or criminal judicial proceeding by the defendant, (2) the termination of the proceeding in the plaintiff's favor, (3) the absence of probable cause for the proceeding, (4) the presence of malice, and (5) damages to the plaintiff resulting from the commencement or continuance of that proceeding." *Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill. App. 3d 340, 346, 733 N.E.2d 835, 840 (Ill. App. Ct. 2000). The Epic Burger defendants contest the third and fourth elements, arguing that the "existence of probable cause for an arrest totally precludes malicious prosecution claims, regardless of whether the defendant had malicious motives for implicating the plaintiff" and that even if "a civilian knowingly provides false information to the police, the civilian is not liable for commencing a criminal proceeding if the prosecution is based on separate or independently-developed information." Mem. Supp. Epic Burger MTD at 3, 5, ECF No. 30.[7]

According to the Epic Burger defendants, a grand jury indictment conclusively establishes the existence of probable cause as to the charged crime. The Illinois Supreme Court has ruled, however, that an indictment is only prima facie evidence of probable cause and "may be rebutted by other evidence such as proof that the indictment was obtained by false or fraudulent testimony

---

[7] In their motion to dismiss, the Epic Burger defendants also argue that the Cook County State's Attorney, not they, brought the criminal matter against Todd. Mem. Supp. Epic Burger MTD at 6, ECF No. 30. This contention is unavailing: "a person can be liable for commencing or continuing a malicious prosecution even if that person does not ultimately wield prosecutorial power . . . liability for malicious prosecution 'extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all of the elements of the tort are present.'" *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 43, 131 N.E.3d 488, 499 (Ill. 2019) (quoting *Frye v. O'Neill*, 166 Ill. App. 3d 963, 975, 520 N.E.2d 1233, 1240 (Ill. App. Ct. 1988)).

before the grand jury, or by failing to make a full or complete statement of facts, or by other improper or fraudulent means." *Freides v. Sani-Mode Mfg. Co.*, 33 Ill. 2d 291, 296, 211 N.E.2d 286, 289 (Ill. 1965). That Todd was indicted by a grand jury does not preclude his malicious prosecution claim given his allegations that the indictment was obtained through false information provided by the Epic Burger defendants and the police officer defendants. "Knowingly false statements by the affiant cannot support a finding of probable cause, and as we read the complaint, that is all there was." *Alexander v. United States*, 721 F.3d 418, 423 (7th Cir. 2013); *see also Rodgers*, 315 Ill. App. 3d at 346, 733 N.E.2d at 840 (denying motion to dismiss where plaintiff alleged that defendants "did not have an honest suspicion regarding plaintiff's guilt and they were not acting in good faith where defendants knowingly provided false information to the State's Attorney's Office and to the grand jury, which resulted in his indictment"). Accordingly, the indictment does not conclusively show probable cause, nor does it bar Todd's claim.

The Epic Burger defendants argue that even if they knowingly provided false information to the police, to the extent that the police conducted an independent investigation upon which the indictment was based, they cannot be liable for malicious prosecution. "The rule is that even if an individual knowingly provides false information to a prosecuting authority, he or she is not liable for commencing a criminal proceeding if the prosecution is *based upon* separate or independently developed information . . . In other words, a prosecutor's independent investigation only absolves the provider of false information from liability if the prosecutor's ultimate decision to proceed with the prosecution is 'based upon' the new, non-falsified evidence." *Simon*, 175 F. Supp. 3d at 982 (citing *Randall v. Lemke*, 311 Ill. App. 3d 848, 851, 726 N.E.2d 183, 185-86 (Ill. App. Ct. 2000)). Here, the Epic Burger defendants allege that after they allegedly misidentified Todd in the surveillance video, the police officer defendants reviewed the surveillance footage and

independently concluded that it was Todd in the video. Because the officers "were free to rely on the information provided by Bock, Lannguth and Torka, or to not do so," they argue, the prosecution is not attributable to the Epic Burger defendants. Mem. Supp. Epic Burger MTD at 8, ECF No. 30.

The Court cannot say with certainty, however, that the police officers' charges against Todd were based on "new, non-falsified evidence" rather than parroting the Epic Burger defendants' false identification (particularly given the Epic Burger employees' substantially greater familiarity with Todd's appearance, build, mannerisms, and other characteristics that can inform an identification). This case is distinguishable from those the Epic Burger defendants cite, in which a private defendant provides false information, but the police or prosecution develop different or additional information that supports the charge and absolves the private defendant of liability for malicious prosecution. In *Randall*, 311 Ill. App. 3d at 851, 726 N.E.2d at 185, the plaintiff was indicted on charges entirely unrelated to the false report that the defendant had conveyed to police; in *Szczesniak v. CJC Auto Parts, Inc.*, 2014 IL App (2d) 130636, ¶ 13, 21 N.E.3d 486, 491-92 (Ill. App. Ct. 2014), the police conducted two independent investigations into the plaintiff's conduct and verified over the course of six months that the plaintiff had indeed committed the charged conduct; in *Johansen v. Haydysch*, No. 14-CV-4994, 2015 WL 7568447, at *3 (N.D. Ill. Nov. 25, 2015), after the defendant falsely reported one of his employees to the police for theft, the police manufactured trumped-up charges above and beyond what the defendant had reported. Here, by contrast, there is only the identification of Todd as the burglar, both by the police and the Epic Burger defendants. At this stage, the Court cannot say that the police reviewing the surveillance video and concurring with the Epic Burger defendants' identification of Todd constitutes an "independent investigation" that forecloses liability for the Epic Burger defendants,

particularly given Todd's conspiracy allegations, under which "any testimony or evidence put forth by one Defendant in furtherance of the conspiracy's goal can be held against all Defendants." *Hill v. City of Harvey*, No. 17-CV-4699, 2018 WL 278720, at \*6 (N.D. Ill. Jan. 3, 2018) (citing *Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946)).

Finally, the Epic Burger defendants argue that Todd has not sufficiently pled lack of probable cause and malice. Mem. Supp. Epic Burger MTD at 6, ECF No. 30. Under the pleading standard outlined in *Alexander*, 721 F.3d at 423-24, however, Todd has met his burden. He has alleged he was prosecuted in the absence of probable cause, as he asserts that his arrest and prosecution were based on the defendants' false identification of him as the burglar in the surveillance video though it was clearly not him. "Malice is defined as the initiation of a prosecution for any reason other than to bring a party to justice." *Rodgers*, 315 Ill. App. 3d at 349, 733 N.E.2d at 842. Here, Todd alleges that the Epic Burger defendants were aware of the discrimination claim he had filed regarding his termination, that they implicated him in the burglary soon after he filed the claim, and that parts of the surveillance video are inexplicably missing. The inference is that the Epic Burger defendants falsely implicated Todd in the burglary, not because he was the burglar but for reasons related to his termination and discrimination claim. At this stage, these allegations are sufficient to plead malice and lack of probable cause. *See Alexander*, 721 F.3d at 423-24. Todd has sufficiently stated a claim for malicious prosecution against the Epic Burger defendants.

In addition to malicious prosecution, Todd alleges that the Epic Burger defendants were involved in a civil conspiracy. The defendants complain that Todd "has not provided even minimal facts supporting a conspiracy, such as when the agreement was formed and the terms of the agreement," arguing that Todd's "failure to allege how Bock, Lannguth and Torka conspired with

12

the CPD Defendants is a threshold pleading deficiency in this case" and that "Plaintiff fails to allege that the Epic Burger defendants fabricated evidence." Mem. Supp. Epic Burger MTD at 13-14, ECF No. 30. Contrary to defendants' representations, it is "enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002); *see also Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003) ("any of our older opinions requiring more than notice of the time, scope, and parties cannot be squared with *Swierkiewicz* and conspiracy's absence from the list in Rule 9(b)"). Drawing all reasonable inferences in his favor, Todd has indicated the parties (the Epic Burger defendants Bock, Lannguth, and Torka and the police officer defendants Bridges, De Luna, Pilgrim, Resendez, Wolenski, Sanders, Wynn, Glowacki, and Cook), the general purpose (to frame Todd for the burglary), and the approximate date (early 2017, after his termination in March and prior to his arrest in June).[8] These allegations are sufficient to state a claim for conspiracy.

As to Todd's false arrest claim, the Epic Burger defendants first argue that the existence of probable cause forecloses the claim and then argue that they cannot be held liable for false arrest when they only provided information to the police. As with Todd's malicious prosecution claim, an indictment will not shield the defendants when obtained with false information. Although it "is true that, when a police officer makes a false arrest, a plaintiff may recover against a private

---

[8] As discussed, Todd need not plead the particulars of the Epic Burger defendants' participation in the alleged conspiracy at this stage. Nevertheless, to the extent that defendants complain that Todd has not pled these facts, this case is distinguishable from *Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 859-60 (7th Cir. 1999), which was unique in that the plaintiff "did not so much as hint at what role" the defendant had played in the alleged conspiracy. *See Walker*, 288 F.3d at 1007-08. Here, Todd has alleged that each of the Epic Burger defendants falsely implicated Todd as being the individual involved in the burglary based on the surveillance video and that this false identification was used at each stage of his prosecution. Compl. ¶¶ 66-67.

13

defendant who supplied information to that police officer . . . the private defendant is subject to liability only if he either (1) directed the officer to arrest the plaintiff; or (2) procured the arrest by giving information that was the sole basis for the arrest." *Randall*, 311 Ill. App. 3d at 852, 726 N.E.2d at 186 (citing *Odorizzi v. A.O. Smith Corp.*, 452 F.2d 229, 231 (7th Cir. 1971)). "The determination of whether a defendant's conduct constitutes an actual request that the plaintiff be arrested, encouragement for the plaintiff to be arrested or the mere giving of information must be made on a case-by-case basis . . . and is a question of fact." *Carey v. K-Way, Inc.*, 312 Ill. App. 3d 666, 672, 728 N.E.2d 743, 748 (Ill. App. Ct. 2000). Todd's conspiracy claim muddles this question further: it is plausible that the Epic Burger defendants directed Todd's arrest as part of the agreement, or that their conspiratorial agreement to misidentify Todd as the burglar was the sole basis for his arrest. At this juncture, the Court cannot say that Todd's allegations are insufficient to state a claim for false arrest. *See Gvozden v. Mill Run Tours, Inc.*, No. 10-CV-4595, 2011 WL 1118704, at *5 (N.D. Ill. Mar. 28, 2011) ("Because of the fact-specific nature of this inquiry, the Court concludes that dismissal of Plaintiff's state-law false arrest claim . . . is not proper at this time.").

Finally, Todd brings a claim for intentional infliction of emotional distress against the Epic Burger defendants. While it is true that "a private person making a report to the police typically will not rise to the level of extreme and outrageous conduct," *id.* at *7, the Court cannot conclude that a private person making a false report to police can never support an IIED claim; indeed, some courts have found that such false reports are sufficiently extreme and outrageous to state a claim. *See, e.g.*, *Wallace v. City of Zion*, No. 11-CV-2859, 2011 WL 3205495, at *6 (N.D. Ill. July 28, 2011); *but see, e.g.*, *Schiller v. Mitchell*, 357 Ill. App. 3d 435, 450, 828 N.E.2d 323, 336 (Ill. App. Ct. 2005). Moreover, to the extent that the Epic Burger defendants argue that Todd has not alleged

sufficiently severe emotional distress to support his claim, Mem. Supp. Epic Burger MTD at 11-12, ECF No. 30, "such evidence is not necessary or appropriate at this stage, since we are only evaluating the sufficiency of the pleadings." *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 25, 607 N.E.2d 201, 213 (Ill. 1992). Taking all facts in the complaint as true and construing all reasonable inferences in Todd's favor, the Court finds that he has sufficiently stated a claim for intentional infliction of emotional distress as to the Epic Burger defendants.

\* \* \* \* \*

For the foregoing reasons, the police officer defendants' motion to dismiss is granted in part and denied in part, and the Epic Burger defendants' motion to dismiss is denied. Todd's IIED claim is dismissed as to the police officer defendants but not as to the Epic Burger defendants; all other claims may proceed.

Date: July 8, 2020

John J. Tharp, Jr.
United States District Judge